## Case No. 2,840.
### CLARK v. WILSON.

[Nowhere reported; opinion not now accessible. See next following case, No. 2,841.]

## Case No. 2,841.
### CLARK v. WILSON.
[3 Wash. C. C. 560.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1819.

FOREIGN ATTACHMENT—PARTIES—FORMER ATTACHMENT.

1. Motion to dissolve a foreign attachment. The cause of action stated in the affidavit, which was made by one Smith, as the agent of the plaintiff's testator, was the non-performance, by the defendant, of the stipulations in a charter party, made with the plaintiff's testator, the owner of a ship; the defendant having refused and wholly renounced the employment of the ship on the voyage described in the contract; by which damages were sustained to a large amount. The amount of the plaintiff's claim cannot with propriety be averred or sworn to; and being entirely for unliquidated damages, to determine which no known standard can be referred to, a foreign attachment cannot be sustained.

2. The charter party having been entered into by Smith and the defendant, although in the body of it he states himself the agent of Clark, yet, as all the covenants are made with Smith, and he executed the instrument in his own name, without reference to Clark, the action cannot be sustained in the name of Clark.

3. It is no objection to a foreign attachment, that the plaintiff had sued out an attachment, in another state, for the same cause of action.

4. Quere. If the defendant had given bail in the first attachment, whether a second could be sustained.

This was a rule upon the plaintiff [Clark's executor] to show his cause of action, and why the foreign attachment, which had been issued, should not be dissolved. The plaintiff showed cause, by producing the affidavit of John E. Smith, in which he swears; that, on the 31st August, 1805, a covenant was entered into between the defendant and the deponent as agent of James Clark, the testator, at London, a copy of which is annexed to the affidavit; and that, in pursuance thereof, the ship Portsmouth, therein named, took on board, at Portsmouth, from the defendant, such lawful goods as the defendant thought proper to ship, and proceeded on her voyage for Montevideo, and touched, agreeably to said covenant, at the coast of Africa, for passengers for Montevideo; and, on her voyage thence, the ship, before her arrival at Montevideo, was, without any fault of the owner or his agents, seized on the coast of Africa and sent to London, where she was detained for a long time, and then liberated, and restored to the deponent, as agent of Clark. That, with all possible despatch, he caused the said ship to be repaired, and then proposed to the defendant to cause the said ship to prosecute and complete the aforesaid voyage, and to do and perform every thing incumbent on him to do by the terms of the

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

said covenant; and that he was willing and ready to perform the same. But the defendant did not, and would not, permit the ship to perform the voyage, and refused so to do; and absolutely violated his contract therein, and wholly renounced the charter party, and the farther prosecution of the transaction connected therewith. .That, if the said voyage had been proceeded in, agreeably to the covenant, and the deponent's offer as agent as aforesaid, the ship would have been employed during her said voyage 24 months, as the defendant believes; which, agreeably to the terms of the covenant, would have yielded a freight of £16,080 2s., and which, with the exception of a small credit, has been lost to the plaintiff, by the breach of the said covenant by the defendant. He firmly believes, that damages, including interest, have been sustained by the plaintiff, by said violation, to the amount of 102,000 dollars. The material parts of a charter party similar to that referred to in this affidavit, are well stated by the judge in 8 East, 437.

WASHINGTON, Circuit Justice, delivered the opinion of the court. Various reasons have been assigned why this attachment should be dissolved, of which two only will be particularly examined. The first is, that this action is brought to recover unliquidated damages, which, it is contended, cannot be the subject of a foreign attachment under the law of this state. This subject was very much considered in the case of Fisher v. Consequa [Case No. 4,816], cited at the bar; and although we do not think that the court, in that case, gave too liberal a construction to the attachment law, we should nevertheless examine the ground with great caution, before we make any further advance. The principle decided in that case was, that a demand arising ex contractu, the amount of which was ascertained, or which was susceptible of ascertainment by some standard, referable to the contract itself, sufficiently certain to enable the plaintiff, by affidavit, to aver it, or a jury to find it; might be the foundation of a proceeding by way of foreign attachment, without reference to the form of action, or to the technical definition of debt, the expression used in the law.

The cause of action shown in this case was, in substance, that the defendant, in the attachment, agreed to deliver to the plaintiff teas of a certain quality, and suited to a particular market; and, on failure to do so, to pay the difference between teas of the stipulated quality, and such as should be delivered; that teas of inferior quality to that stated in the agreement, were delivered; and the plaintiff swore, that the. difference amounted to a precise sum, in which the defendant was justly indebted to him. The standard, therefore, was the difference in the quality of two articles, and all that remained to be ascertained, was the value or

amount of such difference; which was as easily ascertained, as the value of goods sold, where no price was agreed upon. The standard was fixed by the contract itself; and the amount of the claim, in reference to it, was so plainly to be ascertained, that the plaintiff was enabled to aver it in his affidavit, and he did so.

This action is founded on a charter party, by which the defendant covenants to pay to John E. Smith, his executors, &c., £670 per month; during the time the ship shall be employed by the freighter, during her intended voyage; and so in proportion for any time less than a month, in full of the freight of the said vessel; and he covenants also, to pay two third parts of all pilotage and port charges, during the voyage; and also two third parts of all expenses of storing the ship's cargo at Montevideo—such freight, pilotage, and port charges, to be paid on the arrival and discharge of the ship at her destined port in Great Britain. He further covenants to furnish sufficient water and provisions, for all passengers she may take on board, during the voyage to Montevideo. These are all the covenants in this instrument, on the part of the defendant; and it is obvious, that he is not liable for a breach of any of them, inasmuch as his performance depended upon the completion of the voyage, and the arrival and discharge of the ship at her destined port in Great Britain.

Whether the plaintiff can maintain any action upon this charter party, by reason of the refusal of the defendant to take on board a cargo, and to prosecute the voyage, is a question which has not been considered by the court; nor is it necessary that it should be decided. For, if an action can be maintained upon it, it still remains to be inquired, by what standard are the damages, which the plaintiff has sustained on account of the refusal of the defendant to perform the voyage, to be ascertained? That furnished by the contract, was a certain sum per month, during the voyage, to be ascertained at its termination; but that event never took place; and consequently, no rule can be deduced from this source, to fit the present case. The affidavit, showing the cause of action, refers to the same standard; and must necessarily be equally defective. The plaintiff's counsel is therefore compelled to go out of the contract; and there, finding himself perfectly at large, he has suggested a scheme for ascertaining the amount of the plaintiff's loss; which he considers to be so entirely unexceptionable, that there could not be two opposing opinions respecting it, entertained by legal minds. This rule is, to deduct from the ordinary time consumed in performing such a voyage as that described in this charter party, estimated at the rate of £670 sterling per month, the usual expenses incident to it; and to give to the plaintiff the difference. We must be permitted to dissent from such a standard as this;

because, if it be such a one as deserves the appellation of a legal rule, it would apply as well to the case of an original refusal of the freighter to proceed on the voyage, as to the subsequent refusal, after the fruitless attempt which was made in this case; and then it would happen, that the plaintiff would be entitled to the stipulated freight, as if it had been earned; and yet the ship might be employed, during the whole period of the supposed duration of the voyage, in earning other freights for the owner. This would be most unjust; and yet it would result from the proposed rule:—discard it, and then it is not easy to perceive any other which affords a solitary landmark to guide, either the plaintiff, in stating and swearing to the amount of his demand, or the jury in ascertaining it. Smith swears, that he believes the plaintiff has sustained damages, including interest, equal to the sum of 102,-000 dollars; and this belief is obviously founded on another, that the freight would have amounted to that sum, if more contingencies than we have time to enumerate, had not happened. But, it has been already observed, that this witness assigns a very unsatisfactory reason for his belief; and consequently, it is entitled to very little respect.

This, then, is a case, in which unliquidated damages are demanded;—in which, the contract alleged as the cause of action, affords no rule for ascertaining them;—in which, the amount is not, and cannot, with propriety, be averred in the affidavit; and which is, and must be, altogether uncertain, until the jury have ascertained it; for which operation, no definite rule can be presented to them. In our opinion, it has not one feature of resemblance to the case of Fisher v. Consequa. [supra]. In the latter, there was a promise by the defendant, alleged and supported by oath, to pay the difference between two articles of different value; in the former, there is no promise or covenant of any kind, verified by oath, or even stated, to pay anything in the event which took place. 2. We are of opinion, that this attachment cannot be supported; because the plaintiff has shown no cause of action whatever. In answer to this rule, calling upon him to show his cause of action, the plaintiff exhibits a charter party, entered into between the defendant and John E. Smith, the only parties who executed it, and between whom all the covenants are made. John E. Smith styles himself, it is true, in this instrument, agent of James Clark; and in his affidavit, he states, that he acted in this transaction as agent. But notwithstanding these allegations, it is too much to contend, that James Clark, who, by himself, or by his attorney, did not execute the deed, who is not even stated in the body of it to be a party, and with whom no one covenant is made, can support this action.

It is admitted, by the plaintiff's counsel, that, if the action were in the name of a total stranger to this transaction, advantage might be taken of it upon this rule; but it is insisted that the plaintiff is beneficially interested in this covenant, and consequently, that the defendant should be put to his plea, to bar the plaintiff's right to maintain the action. We cannot accede to this distinction. The question is not whether the plaintiff is a stranger in interest, but whether he shows a probable cause of action in himself? and if by his own showing he is not entitled to bring the action, the defendant ought not to be subjected to the inconvenience of giving special bail; in order to release his property from the attachment, and to enable him to defeat the action by plea. In a doubtful case, depending either upon the law or the evidence, the court will not interfere in this summary mode to take from the plaintiff the security he has obtained. But where the defect is apparent from the plaintiff's own showing, we take the rule to be otherwise. The defendant assigned another cause for dissolving this attachment, which the court does not think sufficient:—this was the record of an attachment, sued out by this plaintiff against this defendant, in the state of Maryland, for the same cause of action, with a capias claim against the garnishee, who, it is sworn by the plaintiff, has effects in his hands belonging to the defendant, and who, it appears by the sheriff's return, has been arrested. · The mere pending of an attachment by the plaintiff against the defendant, for the same cause of action, in another state, affords no ground for dissolving this attachment, although that was the first laid; since the funds found in one state may be quite insufficient to discharge the debt. The case might be different, if the defendant had given bail on the first attachment, unless under very special circumstances, addressed to the sound discretion of the court. The rule must be made absolute for dissolving the attachment.