ADALINE BARNES, Appellant, *v.* NICHOLAS BUCK, Respondent.

(GENERAL TERM, EIGHTH DISTRICT, MAY, 1869.)

In an action founded on an alleged breach of the contract to marry, no warrant of attachment is allowed by the provisions of the Code; and where, in such case, an attachment has been issued, it will be set aside on motion.

The contract to marry is not, it seems, embraced in a statute referring to contracts in general.

APPEAL from an order of the Allegany Special Term, setting aside an order of attachment.

The court, in affirming the order below, adopted the following opinion there given by LAMONT, J. The facts are therein stated.

*Judson* and *Ames*, for the appellant.

*Benson* and *Van Deusen*, for the respondent.

Present—MARVIN, BARKER and.LAMONT, JJ.

By the Court—LAMONT, J. This is an action founded on an alleged breach of promise of marriage. The defendant is not a resident of the State. The plaintiff obtained an attachment against defendant's property, and now the latter moves to set it aside, upon the ground that no warrant of attachment can be

issued in such an action by the provisions of the Code.   The reported cases have exhibited a wide difference of opinion upon the proper construction of those provisions of the Code, relating to the issuing of attachments.   At present, however, the principal ground of such difference has been removed by the amendment of the Code, enacted in 1866, which restricts, by its terms, the cases in which attachments are allowable, to actions arising on contract for the recovery of money only, and actions for the wrongful conversion of personal property. (Code, § 227.)   Before this alteration, an attachment might be issued " in an action for the recovery of money " (Code of 1849, § 227), or " in an action for the recovery of *the* money," as it was amended in 1857; and it had been held, in some cases, that this provisional remedy could be granted in actions of pure tort, as for an assault and battery.   (*Hernstien* v. *Matthewson*, 5 How., 196; *Floyd* v. *Blake*, 11 Abbott, 349.) In other cases, it was held that no attachment could issue in an action for such wrongs.   (*Gordon* v. *Gaffey*, 11 Abbott, 1; *Shaffer* v. *Mason*, 18 Abbott, 455.)   It has become quite unnecessary to consider that question now ; both, because the Code itself has been changed, and because the court at General Term, in this district, has decided against the construction which allowed attachments in actions for torts.   (*Saddlesvene* v. *Arms*, 32 How., 280.)   In the last case, the attachment was issued in an action of assault and battery, before the Code was amended in 1866.   I am not aware of any decision, either allowing or denying the provisional remedy by attachment in an action founded upon a breach of promise of marriage.

If we look no further than the words of § 227 of the Code, which allows an attachment " in an action arising on contract, for the recovery of money only," it would at first view seem difficult to deny that an attachment is authorized in the present case, which is an action founded on an alleged contract to marry between these parties, and the action is also for the recovery of money only.   Nothing but money is sought to be recovered for the alleged breach of the contract.   The true meaning, however, of a single clause or sentence con-

Barnes *v.* Buck.

tained in the Code, cannot always be ascertained without looking into its other provisions. The Code is one whole statute, intended to provide a complete system of remedies for the enforcement of the rights of parties. Its different sections reflect light upon each other, and we should fall into serious errors, did we not compare together its various provisions in arriving at its proper construction.

"It is an established rule in the exposition of statutes," says Chancellor KENT, "that the intention of the lawgiver is to be deduced from a view of the whole, and every part of a statute, taken and compared together. The real intention when accurately ascertained will prevail over the literal sense of the terms, *scire leges non hoc est verba earum tenere sed. vim ac potestatem,* and the reason and intention of the lawgiver will control the strict letter of the law, where the latter would lead to palpable injustice, contradiction or absurdity." (1 Kent Com., 461, 462.)

By § 129 of the Code it is provided, that the plaintiff shall insert in the summons a notice, in an action arising on contract for the recovery of money only, that he will take judgment for a sum specified therein, if the defendant fails to answer, &c. Again, in § 246, the plaintiff in any action arising on contract for the recovery of money only, is authorized to file with the clerk proof of personal service, &c., and the clerk shall thereupon enter judgment for the amount mentioned in the summons, in case the complaint is duly verified. These three sections, 129, 227 and 246, all contain the same phraseology, that is, the words " in an action arising on contract for the recovery of money only."

These sections relate to the first step in the action; that is, the summons (§ 129); to the final termination of the action; that is, the judgment (§ 246); and to this provisional remedy by attachment (§ 227). If an action arising on a breach of promise of marriage is, within the meaning of the Code, an action arising on contract for the recovery of money only, then it follows, that in such action, the notice in the summons should be, that if the defendant fail to answer, the plaintiff

Barnes *v.* Buck.

will take judgment for the sum specified in the summons, whether it be a hundred dollars or a hundred thousand; and if the plaintiff verifies the complaint, which she may safely do in every case, when the marriage contract shall have been made and broken, the clerk will be compelled for want of an answer, to enter judgment for whatever sum the plaintiff shall have the conscience to demand in the summons. (Code, §§ 129, 246.) It has been held by the more recent and better authorities, that an action founded on a breach of promise of marriage is not, within the meaning of § 129 of the Code, an action arising on contract for the recovery of money only. (*McNeff* v. *Short*, 14 How., 463; *Davis* v. *Bates*, 6 Abbott, 15; *McDonald* v. *Walsh*, 5 Abbott, 68.) Mr. Justice MARVIN, with the concurrence of a full bench, at General Term, in this district, came to the conclusion in the case of *Saddlesvene* v. *Arms*, before cited, that the provisional remedy by attachment is confined to actions upon contract (but now further including actions for the wrongful conversion of personal property), in which the amount to which the plaintiff is entitled can *be specified*. (32 How., 286.) How can the amount of money to which the plaintiff is entitled in an action for the breach of a promise of marriage be specified? The complaint alleges the agreement to marry, and the refusal to perform it. Can the plaintiff tell what she ought to have? Can the clerk enter a judgment for all the plaintiff supposes she ought to recover? I cannot bring my mind to the belief, that the scheme of the Code allows such a judgment to be obtained in such a manner. In this action, it becomes necessary to establish a contract of marriage, and a refusal by the defendant to perform it, to entitle the plaintiff to recover any, even nominal damages. But how much more than this she ought to recover, must depend upon circumstances which may not, and usually cannot, appear in the pleadings. Damages in this kind of action may be given to compensate the plaintiff for injured feelings, rejected affections, and wounded pride, as well as for an actual loss of marriage. And on the other hand, the conduct of the plaintiff may mitigate and reduce, even when it does not

absolutely bar the plaintiff's recovery. (Sedgwick on Damages 369, &c.) Even the pecuniary condition of the defendant, may affect the amount of the recovery. (*Kniffen* v. *McConnel,* 30 N. Y., 285.)

The scope of the reasoning in *Saddlesvene* v. *Arms,* above cited, is quite inconsistent with the idea that an attachment is allowable in this class of actions. In an action arising on contract for the recovery of money only, the plaintiff states in his summons that in case of defendant's default in answering, he will take judgment for a sum specified in the summons, that is, a sum of money certain ; and, in other actions, that in case of defendant's default, he will apply to the court for the relief demanded in the complaint. (Code, § 129.) By section 142, the relief demanded in the complaint is not any part of the plain and concise statement of the facts constituting a cause of action, but it is the relief to which the plaintiff *supposes* himself entitled. If the recovery of money be demanded, the amount thereof should be stated.

If it be something else than money, or if it be money, and something else in addition to money, that he supposes himself entitled to, he states what he demands accordingly.

A demand for money is as much a demand for relief, as a demand for the specific performance of a contract, a strict foreclosure of a mortgage, or for the recovery of the possession of real estate. Where no answer is made, the relief granted to the plaintiff cannot exceed that which he shall have demanded in the complaint (not in the summons), but in any other case, that is, in all cases where the defendant puts in an answer, the court may grant the plaintiff any relief consistent with the case made by the complaint, and embraced within the issue. (§ 275.) Whenever damages are recoverable, the plaintiff may claim and recover, *if he shows himself entitled thereto, any rate of damages* which he might have heretofore recovered for the same cause of action. (§ 276.)

No action can properly be said to be, within the meaning of the Code, an action arising on contract for the recovery of money only, as those words are used in §§ 129, 227 and 246,

Barnes *v.* Buck.

unless the supposed contract relates to property of some kind, to some pecuniary interests to be affected by its breach, and the violation of which enables the party aggrieved to state to the court, in his complaint, such facts as will show damages of a pecuniary character, and such damages as may be ascertained by some legal rule of indemnification.

Unlike other contracts, the agreement to marry has no necessary relation to property; it may be contracted between worthless paupers who expect, by its fulfillment, to realize no pecuniary benefit. When once consummated by actual marriage, unlike other contracts, between party and party, it cannot be rescinded or dissolved by their mutual consent. Marriage is more a civil institution of the State than a mere executed agreement between husband and wife, and the contract to marry, when violated, affords to the injured party a measure of redress, in the remedy given by the law, which does not attach to the violation of private contracts, but ranks among willful and malicious wrongs to the person and the character, wherein damages may be meted out to the delinquent party on the principle of punishment, as well as upon the theory of pecuniary indemnity, for actual loss sustained.

Furthermore, a contract, as that word is ordinarily understood, may be entered into between any two or more persons of full age; not so the contract to marry, into which only two persons can enter, and those unmarried persons, and of different sexes.

It is so far different from all other contracts, and has so many peculiar qualities not belonging to contracts in general, that it is not embraced in a general statute which speaks of, or regulates contracts, without some particular reference to the contract to marry. The rights growing out of ordinary contracts between party and party survive to their representatives; but the right and the remedy accruing from the contract to marry, die with the person, and cannot afterward be enforced. We are not without authority for holding that the contract of marriage is not to be considered as embraced in a legislative or constitutional provision relating to contracts,

although the word used in the law may be the word *contract*, without any expressed qualification. The constitution of the United States provides that no State shall pass any law impairing the obligation of *contracts*. (Art. 1, § 10.) The constitution contains no terms expressly qualifying the meaning of the word "*contracts*," as thus employed; and if the contract of marriage is to be excepted from the operation of this constitutional provision, it must be upon the ground above suggested, that the marriage contract is *sui generis*, so special and peculiar in its nature, that it would not be understood, in the popular and general understanding of men, to be included in the term *contract* unless specially mentioned.

That question was discussed by a learned judge in the Court of Appeals in *Lawrence* v. *Miller* (2 Comstock, 245), but the majority of the court placed their decision upon another ground. (See page 253.) But in *White* v. *White* (5 Barb. 474), it was decided that the word *contracts* in the constitution of the United States did not embrace *marriage contracts*.

Mr. Justice MARVIN, in the case of *Saddlesvene* v. *Arms*, gave unanswerable reasons why an attachment is not allowable in an action for a wrong as for assault and battery, or slander. He deduced such conclusions from the various provisions of the Code compared together, and other statutes *in pari materia*, as well as by an examination of the machinery of the proceeding by warrant of attachment. He says (32 How. 285): "It is true, he (that is the plaintiff) is to specify the amount of the claim and the grounds of it; but in most actions of *tort the damages are uncertain* and entirely *unknown* until the verdict of the jury is rendered, and the plaintiff may fix them at any sum without the fear of conviction for perjury. This will not be so if the action is for the *breach of a contract*, for then the facts constituting the contract and the breach must be stated as the 'grounds' of the claim, and the *amount* of the claim must be stated. Here are sundry facts to be stated, and if they are not truly stated, the person making the affidavit may be convicted of perjury."

These observations furnish a sound basis for his conclusion; and they further show, that in speaking of a contract and the breach of it, he referred to a contract in the general and usual acceptation of that term, without thinking of the peculiar contract of marriage; for in the case of an action founded on a breach of the latter, the damages are as uncertain and undefinable as they possibly can be in an action of slander or assault and battery. And this illustrates in a very forcible manner that the term "*contract*," as employed in ordinary and popular language is not supposed to include the contract of marriage.

The learned judge comes to the conclusion in the decision referred to, that "this remedy (by attachment) is confined to actions upon contract, in which the amount to which the plaintiff is entitled can be specified" (32 How., 286); and I fully concur in his reasoning and conclusion, which apply with equal force to the present case.

Whether the same identical words have the same meaning as they are used in §§ 129, 227 and 246 of the Code, it is not now necessary to determine. The construction put upon them as used in § 129, has been very fully considered in the case of *Tuttle* v. *Smith* (14 How., 395), and that decision approved in *Cobb* v. *Dunkin* (19 How., 164), both General Term decisions; and those decisions were remarked upon as settling the construction of § 129, in a later case at Special Term in another district. (*Norton* v. *Cary*, 23 How., 469.) This construction is alluded to by Justice MARVIN, in *Saddlesvene* v. *Arms* (32 How., 283, 284); but without admitting that the warrant of attachment is to be confined to those cases, in which the summons must state that judgment will be taken for a specific sum if the defendant fails to answer, or to cases of liquidated damages.

If we adopt the construction put upon this language as used in reference to the summons in § 129, and give the same construction to the same language in § 227, it would follow that no attachment can be allowed in an action on a breach of promise of marriage. But even if that construction is too

limited, as to which no opinion need be here expressed, I am still of the opinion that a warrant of attachment cannot be issued under the Code, except in case of actions arising on contract for the recovery of money only; where the breach of the contract can be compensated by some recognized legal rule or rate of damages, so that the sum due can be made certain either by computation or by evidence. In short, the contract must be one of a *pecuniary* character. This is not the case where the contract is, that one person will marry another, and nothing else. Such a contract is not, in any lawful sense, or ought not to be, a cash transaction. An order must be entered setting aside the attachment issued in this action, but no costs of the motion ought to be given.

Order affirmed.