## COATS v. ARTHUR.

A warrant of attachment was issued upon an affidavit stating that the defendant is a nonresident of this state; that a cause of action existed in favor of the plaintiff and against the defendant for $968, the grounds of which, as stated in said affidavit, are that the defendant sold to the plaintiff certain real estate, and agreed to complete the building thereon, and deliver possession of the same, not later than May 12, 1891, but that he failed to deliver the possession until August 1, 1891; that the rental value of said premises was $180 per month, or $474 from May 12th to August 1st; also that by reason of such delay the plaintiff was unable to rent said premises after August 1st for so much per month, by $130, as he could have done had the possession of said premises been delivered to him at the time agreed upon; and that between August 1, 1891, and the commencement of the action the plaintiff thus sustained damage in the sum of $494, making a total damage of $968. *Held,* that the warrant of attachment properly issued, and that the court committed no error in refusing to dissolve and discharge the same. FULLER, J., dissenting.

(Syllabus by the court.    Opinion filed April 13, 1894.)

Appeal from circuit court, Minnehaha county. Hon. FRANK R. AIKENS, Judge.

Action to recover damages for breach of contract. The defendant was a non-resident, and on that ground plaintiff sued out an attachment. Defendant moved to dissolve the attachment on the ground that the cause of action as disclosed by the affidavit for an attachment was not one upon contract for the recovery of money only. The motion was denied and defendant appeals. Affirmed.

The facts are stated in the opinion.

*Wynn & Nock,* for appellant.

Cited the following authorities: Comp. Laws, Sec. 4995; Tuthill v. Smith, 14 Howard Practice 402; Henson v. Decker, 29 Howard Practice 386; Wait's New York Annotated Code of Civil Procedure, p. 160, 400; Knapp v. Meigs, 11 Abbott's Practice Reports, 405; Saddlevenc v. Arms, 32 How. Pr. Rep. 280; Crossman v. Lindsey, 42 How. Pr. Rep.; Wilson v. Har-

vey, 52 How. Pr. Rep. 126; Wm. Deering & Co. v. Warran, 44 N. W. 1069.

*Davis, Lyon & Gates,* for respondent.

Cited the following authorities: Ins. Co. v. McLean, 48 Barb. 27; Floyd v. Blake, 11 Abb. Pr. 349; Sturtevant v. Tuttle 22 Ohio St. 11; Elliott v. Jackson, 3 Wis. 649; Wade on Attachments, Sec. 12; Lawton v. Kiel, 51 Barb. 30; Clews v. Railroad Co., 2 Hun. 379; U. S. v. Graff, 67 Barb. 309; Corson v. Ball, 47 Barb. 252; Haebler v. Bernharth, 115 N. Y. 459; Seeley v. Railroad Co., 39 Fed. 252; Railroad v. People, 31 Ohio St. 537; Dunn v. Mackay, 22 Pac. 64; Roelofson v. Hatch, 3 Mich. 277; 7 Lawson's Rights and Remedies, Sec. 3507; Wade on Att. Secs. 11, 12, 23.

CORSON, P. J. The plaintiff brought an action against the defendant to recover damages for breach of contract. The defendant being a non resident, the plaintiff sued out an attachment. The affidavit for the attachment (ommitting the formal parts) is as follows: "That a cause of action exists against the defendant and in favor of the plaintiff herein, and the amount of said plaintiff's claim therein is nine hundred and sixty-eight dollars, and the ground thereof is as follows: That is to say, that on or about May 9, 1891, at Chicago, Illinois, the defendant, for a valuable consideration, sold, and conveyed by warranty deed, to the plaintiff, the following premises situated in Chicago, Cook county, Illinois, to-wit, lots 19 and 20 in block 8, in Eames' subdivision of the northeast quarter of the northeast quarter of section 17, in township 38 of range 14 east of the 3rd P. M., and then and there agreed to and with the plaintiff to complete the buildings upon said premises, and to surrender to the plaintiff the keys and possession of said premises, not later than May 12, 1891; that the defendant hereafter failed and neglected to complete said buildings, and to surrender to the plaintiff the keys and possession of said premises, until August 1, 1891, at which last-named date the same were

delivered to the plaintiff, and thereby the plaintiff was deprived
of the use and rent of said premises from and after May 12,
1891; that the rental value of said premises from and after May
12, 1891, was and is the sum of $180 per month, amounting to
$474 to August 1, 1891; that since said last named date, by rea-
son of the unfavorable season of the year for that purpose, the
plaintiff has not been able, although he has made diligent
efforts therefor, to rent said premises for so large a sum, by $130
per month, as he would if the same had been delivered to him at
the time agreed, to plaintiff's damage in additional sum of
$494 from August 1 to November 24, 1891, making the total
amount of damages sustained by the plaintiff from May 12 to
November 24, 1891, by reason of defendant's failure to com-
plete said buildings, and to surrender the keys and possession
of said premises to plaintiff, at the agreed time therefor, to-wit,
May 12, 1891, the sum of $968; and that the defendant, L. J.
Arthur, is not a resident of this state, but resides at the city
of Evanston, county of Cook, and state of Illinois." The de-
fendant appeared specially, and moved the court to dissolve
and discharge the attachment upon the following grounds:
"(1) That the affidavit upon which said attachment was issued
does not state or show a cause of action against defendant in
said action, arising on contract for the recovery of money only,
or for the wrongful conversion of personal property, nor the
grounds thereof. (2) That the court did not have jurisdiction
to issue said warrant of attachment. (3) That said attachment
was not issued in any of the cases in which the statute author-
izes the issuance of a warrant of attachment. (4) That there
is no affidavit in said action, required by the statute for the
issuance of a warrant of attachment. (5) That the court, in
said action, has no jurisdiction over the defendant, or over his
property. Said motion will be made upon the affidavit for the
attachment, and upon all the other papers filed and of record
in said action." The learned counsel for the appellant very
fairly states the question presented by this appeal as follows;

"It is not claimed that the foregoing statement of facts shows an action for the wrongful conversion of personal property, but it is claimed by the counsel for respondent in this case that said statement does show an action arising on contract for the recovery of money only, and the court below so held. The appellant denies this, and claims that said statement does not show an action arising on contract, for the recovery of money only, and this is the only contention in this case." The question presented is an important one, and involves a construction of the statute of this state upon the subject of attachments.

Section 4993, Comp. Laws, provides 'that: "In an action arising on contract for the recovery of money only; or, in an action for the wrongful conversion of personal property, * * * the plaintiff * * * may have the property of such defendant * * * attached." And section 4995 provides that: "The warrant may issue upon affidavit stating: (1) That a cause of action exists against such defendant, specifying the amount of the claim and the ground thereof." What is the proper construction to be placed upon the language, "in an action arising on contract for the recovery of money only," taken in connection with the statement required in the affidavit, "specifying the amount of the claim and the grounds thereof?" Counsel for appellant contend that as the language, "in an action arising on contract for the recovery of money only," is used in section 4894, Comp. Laws, relating to summonses, distinguishing between the two classes, has been construed by the courts of New York, the same language in the attachment law should receive the same construction. But the courts of New York, under an attachment law identically the same as our own, prior to its amendment, held that the language as used in the attachment law, should not be controlled by the construction of the same language in the law relating to summonses; and in thus holding, I think, that court was correct. The objects the two statutes were designed to accomplish are very different, and while, in the one case, the language might very properly

be strictly construed to carry out the intention of the legislature, in the other the language might properly be given a broader and more enlarged construction, to carry out the intention of the lawmaking power. In Lawton v. Kiel, 34 How. Pr. 465, Judge Ingrahm says: "I do not think the cases which have been decided as to the form of the summons should be considered as controlling in regard to the issuing of attachments." In U. S. v. Groff, 67 Barb. 304, Daniels, J., speaking for the court upon this question, says: "Very different considerations, required by the history and object of the section providing for what demands attachments may be issued, have been applied to its construction. To promote the efficiency of that remedy, it has been held to include actions on contracts for the recovery of even unliquidated damages, where a proper disclosure of the grounds of the claim supplies practicable means for determining its amount. Lawton v. Kiel, 34 How. Pr. 465; Clews v. Railroad Co., 2 Hun. 379. And this demand is within the section, under that construction." It appears, therefore, that in that state from the decisions of which, upon the subject of the summons, the counsel for appellant quote mainly in support of their contention, the decisions do not recognize the rule contended for, but clearly indicate that the phrase in the attachment law is to be differently construed. It will be observed that the language used in the attachment law of this state is broad and comprehensive enough to include all actions on contract for the recovery of money only, whether the damages are liquidated or unliquidated. There seems to be no limitation, other than that the action must be one arising on contract, and be for the recovery of money only. But in my opinion this language must be construed with reference to the statement to be made in the affidavit, and that the section relating to the affidavit does further limit the language used to claims, the amount of which can be definitely specified. The claim must, therefore, be for some definite, ascertained amount, or an amount capable of being definitely ascertained and made

certain by the contract and the statement in the affidavit. This is further evidenced by the third subdivision of section 4995, which provides for an attachment when it appears "that the debt was incurred for property obtained under false pretenses." In this subdivision the term "debt" is evidently used as synonymous with "claim," in the first subdivision. "Arising on contract," therefore, must, I think, be construed to mean a debt or claim ascertained or ascertainable by reference to the contract, or that can be definitely fixed by the rules of law and which is made to clearly appear by the statement in the affidavit of the grounds of the claim. This would include all claims for damages, in which, from the contract, and facts stated in the affidavit, a court, on applying the law, can definitely determine the amount which plaintiff is entitled to recover. In such a case the plaintiff can specify definitely the amount of his claim; and it would exclude all cases where the amount of the claim can be determined by no fixed rule of law, but is to be determined entirely by the opinion of a court or jury. An action for breach of contract of marraige well illustrates the latter class of cases. No court, from the facts stated in the affidavit, could determine by any known or fixed rule, the amount the plaintiff was entitled to recover. The contract being established, no facts could be stated, or evidence offered, that would enable the court to determine the amount which the plaintiff would be entitled to recover, under any known or fixed rules of law. Damages might be given for any sum within the *ad damnum* clause. It is a question of damages, purely, governed by no definite or fixed rules, and therefore no attachment will lie in such an action. This is also well illustrated in the case of Wilson v. Manufacturing Co., 88 N. C. 5. That was an action upon a contract made by the defendant to furnish the plaintiff buggies to sell, which the defendant failed to perform. The plaintiff brought an action for the breach, claiming $1,000 damages. An attachment was issued, and motion made to discharge the same. The motion was sustained, the court, in its

opinion saying: "The rule to be deduced from that case is that an attachment may be had in support of any demand arising *ex contractu*, the amount of which is ascertained or is susceptible of being ascertained by some standard, referrable to the contract itself, sufficiently certain to enable the plaintiff to aver it in his affidavit, or to a jury to find it; but not so if the action be one for unliquidated damages in which the contract alleged furnishes no rule for ascertaining them, but leaves the amount to remain altogether uncertain until fixed by the jury, without any definite rule of law to direct them. The plaintiff in this action seeks to recover compensation for the loss of such profits as he conjectures he might have derived from selling buggies, as agent for the defendant, had they been furnished him according to the terms of the contract. It is therefore a case of purely uncertain damages, with no standard furnished by the contract itself, or fixed rule of law, for ascertaining them; and it is impossible to suppose a case further removed from the provisions of the statute than it is."

A reference to a few of the adjudicated cases will illustrate the principles upon which attachments are permissible in actions to recover unliquidated damages. Lawton *v.* Kiel, 51 Barb. 30, 34 How. Pr. 465, was an action to recover damages for the breach of a contract on the part of the defendant to purchase for the plaintiff sound corn; and the breach complained of was that the corn purchased was not sound, but heated and spoiled. It was contended in that case that an attachment could not be maintained, as the damages were unliquidated. But the court held the attachment was properly issued, saying: "The claim arises on contract, and the amount claimed is a fixed amount, being the difference between the amount paid and the amount at which it was sold." A court, therefore, with the contract before it, showing the amount paid, with proof of the value of the corn delivered, or for which it was sold, could determine the amount the plaintiff was entitled to recover, and the plaintiff could therefore state the amount in

his complaint at a fixed and definite sum.   This case was followed in Clews v. Railroad Co., 2 Hun. 379.   Carland v. Cunningham, 37 Pa. St. 228, was an action for damages for the breach of an agreement.   In that case the court says: "We are all of opinion that the demand was the subject of foreign attachment.   It was capable of being reduced to certainty by a definite standard, and this is all that is required (Clark v. Wilson, 3 Wash. C. C. 560,   Fed. Cas. No. 2,841), for *'id certum est quod certum reddi potest.'*   Clearly, the amount, after the payment of the execution of Coit v. N. & E. Connelly, and the judgment of the defendants, out of the goods (they being chargeable with them as if sold to them), would be what the plaintiff would be entitled to.   These sums were ascertained and fixed, and the value of the goods over and above their amounts, with interest from the conversion of the goods, would define the interest of the plaintiff in them.   This he could recover, but nothing more, in this attachment.   He could recover nothing by way of damages for loss of the advantages of the arrangement."   Habler v. Burnharth, 115 N. Y. 459, 22 N. E. 167, was an action to recover damages for a breach of warranty of personal property.   An attachment was issued and held proper, the court saying: "The rule of damages, upon the facts stated, is the difference in value between the beans of the kind or quality of the sample, and those of the kind or quality delivered."   This decision, it is true, was made upon an attachment law slightly different from the one that we are now considering, and different from the former law of the state of New York, of which ours is a copy, but the principle in both is substantially the same.   In Connecticut, under a statute providing that a creditor may attach the property of his debtor for any debt, it was held that an attachment would lie in an action to recover for a breach of a contract to tow safely certain sawlogs of the plaintiff from New York to New Haven, which, it is alleged were lost.   The court said the value of the logs lost constituted a debt, and that the rule of damages was certain, namely, the

value of the logs lost. Sawmill Co. v. Fowler, 28 Conn. 103. The
court, in that case, with the contract and the proof of the value
of the logs lost, could determine definitely the amount which the
plaintiff was entitled to recover, and the plaintiff could specify
definitely the amount of his claim. In Roelofson v. Hatch, 3
Mich. 277, the court says: "But, again, there are many con-
tracts where, although the damages are not liquidated in the
contract, yet, by well established rules of law, they are capable
of being ascertained definitely upon proof of the facts; and to
hold that in all this class of cases the plaintiff is debarred of
this remedy would be to defeat, in a great measure, the pur-
poses sought to be secured by its enactment. The plaintiff is
required to swear that the defendant is indebted to him upon
contract, express or implied, and to state the amount of such
indebtedness, as near as may be, over and above all set-offs.
*   *   *   Without fully deciding this point, which is not neces-
sarily raised in this case, we see no reason why a demand aris-
ing *ex contractu*, the amount of which is susceptible of ascer-
tainment by some standard referrable to the contract itself,
sufficiently certain to enable the plaintiff, by affidavit, to aver
it 'as near as may be,' or a jury to find it, may not be a founda-
tion of a proceeding by attachment. See Fisher v. Consequa,
2 Wash. C. C. 382, Fed. Cas. No. 4,816. Clark v. Wilson, 3
Wash. C. C. 560, Fed. Cas. No. 2,841. In the present case
the contract furnishes such standard, equally as does any con-
tract for goods sold, or work or labor done, without express
agreement as to price or compensation." This case would be
much more satisfactory if it contained a statement of the facts,
or a statement of the nature of the contract, but the language
of the court so clearly expresses what I regard as the true rule
that I have quoted from it. One further authority will suffice:
Dunn v. Mackay, 22 Pac. 64, 80 Cal. 104, was a case recently
decided by the supreme court of California, in which
an attachment was held to have been properly issued. In that
case the defendant had sold to the plaintiff a tract of land, and

guarantied that he would sell it within the year, for him, for $12,500. An action was brought for the breach of the contract, the plaintiff alleging that at no time during the year could the land have been of a value exceeding $9,000, and demanding judgment for $3,500 damages. An attachment was issued, and on motion it was dissolved by the lower court. On appeal this order was reversed, the court saying: "Therefore, the simple question is whether an attachment properly issued upon a complaint which, upon its face, showed precisely what the damages were; the affidavit in attachment showing that the defendant was indebted to the plaintiff in the sum of $3,500, upon an express contract for the direct payment of the money. There is no uncertainty appearing on the face of the proceedings as to the amount actually due. At the trial the only thing necessary to fix and determine the amount is to prove the value of the land. The amount agreed to be realized and paid over to the plaintiff is fixed by the contract. Our code does not require that the amount due on the contract shall appear from the contract itself (Code Civ. Proc. § 537), but that the amount of the indebtedness shall be shown by affidavit (Id. § 538). Attachment may issue in an action for damages for the breach of a contract. Donnelly v. Strueven, 63 Cal. 182. And this where proof is necessary at the trial to show the amount of damages. Drake, Attachm. §§ 13–23. But there must exist a basis upon which the damages can be determined by proof. Thus it is said: 'Where the contract sued upon furnished a standard by which the amount due could be so clearly ascertained as to enable the plaintiff to aver it in his affidavit, or the jury, by their verdict, to find it, an attachment might issue." Id. § 15; Wilson v. Wilson, 8 Gill. 192. To the same effect see Wade, Attachm. § 11 et seq.; Sawmill Co. v. Fowler, 28 Conn. 103; Lawton v. Keil, 51 Barb. 30, 34 How. Pr. 465; Turner v. Collins, 1 Mart. (N. S.) 369; Cross v. Richardson, 2 Mart. (N. S.) 323. * * * Having brought his suit for damages, the only evidence necessary to fix the amount due him is as to the value

of the land.　This is as easily done as it would be to prove what the services were worth, in an action on an implied contract for work done, or upon an express contract to pay what the services were reasonably worth, and certainly such contracts would uphold attachment.''

Applying the principles of these cases to the case at bar, I am of the opinion that the attachment properly issued.　By the terms of the contract alleged, the defendant bound himself to complete the building, and turn it over, by May 12th.　He did not have it completed until August.　The rental value, or the value of the use and occupation, for the time intervening between May 12th and August 1st, constitutes the damages the plaintiff would be entitled to recover under the first cause of action stated.　A court, therefore, with the contract and proof of the rental value, could definitely determine the amount due the plaintiff; and the plaintiff can definitely state the amount in his affidavit, as he has done in this case.　To sustain the attachment for the second cause of action is somewhat more difficult, and it comes exceedingly close to the border land.　But it may be that the facts stated or alleged in the affidavit may be sustained by such evidence as to bring it within the principle of the cases cited.　Suppose that the plaintiff should prove that he had a tenant ready, willing and able to take the property at the designated rent for a term of years, but that, by reason of the defendant's delay in completing the building at the time specified, such tenant rented other property, and that when the building was completed and turned over the plaintiff was compelled to accept a tenant at $130 less per month, as he states in his affidavit.　Is this not a fixed and deffinite sum?　Would not the plaintiff be entitled to the difference between the amount he could have obtained if the building had been completed at the proper time, and the rent he was obliged to accept by the delay in getting possession of the building?　If this cause of action stood alone as the ground of the attachment, I should feel some reluctance in sustaining it; but, as the

first ground comes clearly within the rule, the attachment was proper, and the order of the circuit court is affirmed.

KELLAM, J.    I concur in the decision of this case, but am not willing to commit myself to the theory of the opinion that whether an attachment will lie in an action arising on contract, for the recovery of money only, depends upon the directness or indirectness with which the damages can be proved.    The opinion excludes "all cases where the amount of the claim can be determined by no fixed rule of law, but is to be determined by the opinion of a court or jury."    There is no case arising on contract where the damages are left "entirely to the opinion of a court or jury," except as such opinion is the finding or judgment of such court or jury upon computation or assessment based upon facts first ascertained to be true.    A. sues B. to recover for services on an implied contract.    The contract certainly furnishes no measure of damages, for it specifies neither time nor rate.    There is no "fixed rule of law" which applies to this case any more than to any case of general and unliquidated damages.    In such case the damages are "to be determined entirely be the opinion of a court or jury," if they ever are in any case.    Can there be no attachment, then, or will the case be brought within the rule of the opinion if the plaintiff's affidavit states the number of months he worked, and what he claims his services are worth by the month?    This is only his notion of the amount of his damages, and must come from extrinsic evidence, and not from the contract.    The defendant may prove on the trial that his services were valueless, or nearly so, and that he ought to recover nothing, or at least but a small portion of what he claims; but, whatever the court or jury gives him, it gives, not as the result of its opinion, generally, nor upon the form or matter of his affidavit, but upon a computation of the amount of his damages, upon the basis of the facts as proved upon the trial, and not as stated in his affidavit.    Does it import a new principle into the case, making

what would otherwise be an action on contract, for the recovery of money only, one not arising on contract, or not for the recovery of money only, that the court or jury must find several facts, as the basis of its calculation, before it can compute the damages? Or is the latter case essentially different in character, simply because the evidence may be more complex, or the facts to be found, upon which the computation of damages must be based, are less simple and direct? If the supposed *quantum meruit* case is within our attachment statute, I cannot see what excludes any case arising on contract, for the recovery of money only. And this may be the doctrine of the opinion, provided the plaintiff in his affidavit, sets out all the facts in detail which he assumes he can prove on the trial; and such facts would, as in the *quantum meruit* case, entitle the plaintiff to a judgment for a definite amount. A plaintiff could always do this without any risk to himself, but I doubt if the statute contemplates that a plaintiff shall state his evidence in an attachment affidavit any more fully, or in any different manner, than is required in his complaint. The statute says the defendant shall "state" not show, the amount of his claim; that is, how much he claims, and the grounds thereof, and such grounds may be stated in the same general terms as the statutory grounds for the issuing of the attachment. For my part I can see no occasion or necessity for any artificial or restricted construction of the language of the attachment law. I would take it as it reads and apply it to cases coming within its terms. To hold it applicable to one case arising on contract, for the recovery of money only, and not to another depending upon whether the affidavit makes it appear that plaintiffs damages can be established by an easy and direct method, if at all, or only by the use of many and different facts, is to introduce a refinement into the interpretation and consequent meaning of the law which will often cut of the right of our own citizens to enforce in our own courts confessedly meritorious claims for money

only, arising on contract, against nonresidents who have property in the state, and one which will constantly perplex the practitioner, leaving parties in doubt as to their rights and remedies, and increase the expense and trouble which always attend the uncertainties of the law.

It is suggested that this broad rule will permit an attachment in an action for breach of promise of marriage. I think not, necessarily; and even if it would, and the court should think it undesirable, it ought not, on that account, to undertake to take over the law to suit its views of what it should be. A promise to marry, while for some purposes treated as a contract, is not so, in a general sense. It has few of the attributes and is subject to few of the conditions and incidents, of a commercial contract. Very few of the provisions of our code declaring the law of contracts apply to or control it. I can discover no danger here, the avoidance of which would justify a peculiar—and what now seems to be an unnatural—interpretation of our attachment law.

I have only expressed my personal views, and do not assume that they are supported by the authorities. If the question should be presented to this court for decision, I will examine them. I only desire now to withhold my affirmative assent from the restricted effect given to the law in the opinion.

FULLER, J. I cannot concur in the opinion of my associates in this case, although many of the cases cited are in accord with my views. One of the two grounds to which our statute extends the remedy by attachment is to "actions arising on contract for the recovery of money only;" and the affidavit upon which the warrant issues must state, among other things, the amount of the claim, and the grounds upon which it is based. A consideration of the statute, and the cases cited in the majority opinion, convince me that our legislature intended to confine the remedy by attachment, so far as the first ground is concerned, to litigants whose action arose on contract for the re-

covery of a sum of money, the exact amount of which is fixed by the terms of the contract, or is capable of being ascertained by computation, or by some other means or measure provided by the terms of the contract, so that a judgment may be rendered without requiring evidence depending upon considerations n^t involved in the contract, according to its terms; and I do not regard our statute upon the subject of attachments broad enough in its terms to include cases like the present. Our statute only allows a warrant of attachment in actions arising on contract, for the recovery of money, and in actions for the wrongful conversion of personal property, and in the latter case the value of the property converted is fixed by law as the measure of compensation for the wrong. Section 4894, Comp. Laws, requires the plaintiff in an action arising on contract, for the recovery of money only, to insert in the summons a notice that he will take judgment for the sum specified therein if the defendant fail to answer the complaint within 30 days after the service of the summons; and in case of such failure, if the complaint be verified, a judgment may be obtained by complying with Section 5025, and without the introduction of extrinsic evidence as to the amount due. While the nature of the claim, rather than the form of the summons used, should doubtless control in determining whether the law authorizes an attachment in a case like the one under consideration, it is nevertheless instructive to observe that the framers of our statute have made a distinction between an action on a contract that directly provides for the payment of a specified sum of money and an action upon a contract that provides for the performance of something different, although the aim and object of each action may be to procure a judgment for money. In order to bring this case within the statute, a more liberal construction must be placed upon the phrase "actions arising on contract for the recovery of money only," than was intended by Section 4894, Comp. Laws, and I cannot believe the framers of a statute creating a harsh remedy in derogation of the common law, by

which property may be seized and taken from the possession of the owner by one whose rights have not been judicially determined, meant to enlarge the meaning of the expression in a statute which should be strictly construed. If a warrant of attachment extends to a case like the present, no reliable rule of practice could be established without extending the remedy to all actions for the recovery of money as damages upon a breach of contract, express or implied, regardless of whether such damages be ascertainable from the terms of the contract, or merely speculative or unliquidated. Let us take, for example, an action for damages on a breach of contract to marry. Although the suit may result in a verdict for the defendant, or in a judgment for nominal damages in favor of the plaintiff, there is no restriction as to the amount for which the suit may be instituted by the party claiming to be injured; and, if the defendant's property be attached, it can only be discharged by the giving of an undertaking, executed by at least two sureties, to the effect that the sureties will pay the amount of the judgment that may be recovered in the action, not exceeding the sum specified in the undertaking, which shall be at least double the amount claimed by the plaintiff in his complaint. I am unable to distinguish, in principal, an action for damages on a breach of contract to marry from the case before us. In each the damages, if any, are unliquidated, and neither contract discloses any practical means for determining the amount. In the former case, injury to feelings may be alleged and considered as an element of damages. In the latter case, it is alleged in the affidavit that the plaintiff has suffered damages in the sum of $130 per month from August 1st to November 24th, because the building was not completed at the time agreed upon, and by reason of the unfavorable season of the year for the purpose of renting the building in question. Could anything be more speculative? In my judgment an allegation that a plaintiff in an action on a breach of contract to marry had suffered dam-

ages in the sum of $180 could be made and proved with as much certainty as an allegation that the rental value of a building would have been $180 per month if the season had been favorable. Plaintiff, in his affidavit for an attachment, does not state that he could have rented the building at any price, had the same been completed at the time specified in the contract; and the statement that he has suffered damages in the sum of $494 by reason of not being able to lease the premises on as favorable terms as he could have leased them, had the building been completed and turned over at the time mentioned in the contract, would, if alleged in a complaint, be scarcely sufficient, in my opinion, to state a cause of action, or permit the introduction of evidence relating to damages, because, in the language of the statute, "the grounds upon which the claim is based" would not be sufficiently stated. Again, take for example, a patentee who contracts with another to sell an article which he has invented, together with the exclusive right to manufacture, use and vend the same, and afterwards refuses to complete the transaction, and is sued for damages resulting from a breach of such contract. It is evident that such damages must be merely conjectural and speculative in their nature; and, although the object of the action is to recover money, I am convinced that no attachment should issue, as grievous injustice might result from such a practice.

In Tuttle v. Smith, 14 How. Pr. 395, under a statute the same as ours, the supreme court of New York says: "The phrase 'for the recovery of money only,' must be construed to mean the recovery of a definite sum of money, as such, and without calling upon the court to ascertain or adjudge anything but the existence and terms of the contract by which it is due. Whenever the action requires the determination of amounts unliquidated in their nature, requiring other proof, and depending upon other considerations than such as appear in the contract itself, then the action is not for the recovery of money only, as money due and payable by the contract on which the

action arises.   It is rather an action to establish and ascertain the plaintiffs right to damages which are to be paid and satisfied in money." In Barnes v. Buck, 1 Lans. 268, Mr. Justice LAMONT says, "No action can properly be said to be, within the meaning of the code, an action arising on contract for the recovery of money only, unless the supposed contract relates to property of some kind—to some pecuniary interest to be affected by its breach, and the violation of which enables the party aggrieved to state to the court, in his complaint such facts as will show damages of a pecuniary nature, and such damages as may be ascertained by some legal rule of indemnification.   *   * I am still of the opinion that a warrant of attachment cannot be issued under the code, except in cases of actions arising on contract, for the recovery of money only, where the breach of the contract can be compensated by some recognized legal rule or rate of damages, so that the sum due canbe made certain either by computation or evidence.   In short, the contract must be one of a pecuniary character." Section 197, Code Civ. Proc. N. C., provides that: "At the time of issuing the summons or at any time thereafter, the plaintiff may sue out an attachment against the property of a nonresident defendant in an action arising on contract for the recovery of money only, or in an action for the wrongful conversion of personal property." In Wilson v. Manfg. Co., 88 N. C. 5, which is cited in the foregoing opinion, and which was an action to recover $1,000 as damages for a breach of a contract. by the terms of which the defendant had agreed to furnish buggies to plaintiff to be sold on commission, the court says: "The law, as regards this matter, has been recently and fully considered in Price v. Cox, 83 N. C. 261 (an action on a breach of contract to marry); and, as it is impossible to distinguish the two cases in principle, the conclusion then reached must control us now.   The rule to be deduced from that case is that an attachment may be had in support of any demand arising *ex contractu*, the amount of which is ascertained, or is susceptible of being ascertained by some standard referrable to

the contract itself, sufficiently certain to enable the plaintiff to aver it in his affidavit, or a jury to find it; but not so if the action be one for unliquidated damages, in which the contract alleged furnishes no rule for ascertaining them, but leaves the amount to remain altogether uncertain until fixed by the jury, without any definite rule of law to direct them." I am familiar with no rule of law or evidence applicable in the case at bar that is not equally applicable to the case from which I quote, and I see nothing in the contract before us that affords a rule of damages more certain or ascertainable. From 1 Am. & Eng. Enc. Law, 896, I quote the following: "In those states where the amount of the claim must be averred in the affidavit, in order to comply with the statutory provision, attachment will not lie for unliquidated damages resulting from the breach of a contract, unless there is something in the contract itself which affords a rule by which they may be estimated." The author cites, among other cases, Carland v. Cunningham, 37 Pa. St. 228, from which I quote the following: "Foreign attachments will lie for such damages resulting from a breach of a contract as may be reduced to a certainty by a definite standard, but not where they are speculative and unliquidated."

The case under consideration is one for the recovery of damages unliquidated, the amount of which could not be approximately ascertained without the introduction and consideration of evidence, and there is nothing in the contract which affords a rule by which such damages can be ascertained. Our statutes requires the amount of the claim to be stated in the affidavit; and the remedy, in my opinion, is extended only to actions for the wrongful conversion of personal property, and to actions on contract, for the recovery of money, in which the amount specified in the affidavit can be ascertained from the terms of the contract, or estimated by the application of some rule or measure of damages deducible from the terms of the contract upon which the action is predicated.

In Minnesota; under a statute which requires a statement

in the affidavit that the defendant is indebted to the plaintiff in a sum exceeding five dollars, and specifying the amount of such indebtedness, as near as may be, over and above all legal set-offs, that court, in sustaining an attachment in an action to recover damages for certain injuries to property, and delays alleged to have been caused by the unskillfulness and neglect in piloting a certain steamboat from St. Louis to St. Paul, in regard to the objection that the action was for unliquidated damages, says: "This objection to the allowance of an attachment in this case, would be fatal in most of the states of the union. The proceeding by writ of attachment is, in its nature, anomalous, and, being unknown to the common law, has never been particularly favored by the courts. * * * No state has gone to such an extent as ours; for, while other states confine the writ to actions for debt, or, at most, to actions *ex contractu*, Minnesota has overstepped the bounds of precedent, if not, indeed, of prudence, and allows it to issue upon the proper showing in all actions for the recovery of money commenced in the district court, without even making a distinction between actions in tort and those arising out of contract." Davidson v. Owens, 5 Minn. 69 (Gil. 50). This decision leads me to the conclusion that, under the liberal construction placed upon the Minnesota statute, that court would allow an attachment in cases like the one under consideration.

Section 188, c. 8, Laws 1862, provided that: "The plaintiff in a civil action for the recovery of money may, at or after the commencement thereof, have an attachment against the property of the defendant. * * *" Section 189: "An order of attachment shall be made by the clerk of the court, in which the action is brought, in any case mentioned in the preceding section, when there is filed in his office an affidavit of the plaintiff, his agent or attorney, showing: (1) The nature of plaintiff's claim. (2) That it is just. (3) The amount which the affiant believes the plaintiff ought to recover. (4) * * *" At the time this statute was amended by the substitution of the

phrase, "actions arising on contract for the recovery of money only," for the phrase, "civil actions for the recovery of money" the former expression was used, as it is now used, to designate the actions in which judgment, upon failure to answer, might be obtained without the introduction of extrinsic evidence in proof of the amount due; and it is not unreasonable to presume that the legislature, with an understanding of the force and effect of the phrase, introduced it into Section 4993 of the Compiled Laws for the purpose of diminishing the severity of a harsh and oppressive statute by restricting its application to cases within the accepted meaning of the expression. And when we observe that the person making the affidavit is now required to state the amount of the claim, instead of the amount which affiant believes the plaintiff ought to recover, the in tention of the framers of the amended statute, in my opinion, is so clearly expressed, in language so transparent, that the interpreter is without employment. Adopting the language and views of Presiding Justice CORSON, expressed in the opinion: "This is further evidenced by the third subdivision of Section 4995, which provides for an attachment when it appears 'that the debt was incurred for property obtained under false pretenses.' In this subdivision the term 'debt' is evidently used as synonymous with 'claim' in the first subdivision." The word "claim" is preceded by the definite article "the," which further fortifies the position that subdivision 1 of Section 4995 relates to a sum of money reduced, or capable of being reduced, to a certainty, as distinguished from a claim for unliquidated and uncertain damages. The word debt is defined to be: "Whatever one owes; a liquidated demand; a sum of money due by certain and expressed agreement. In its most general sense, that which is due from one person to another, whether money goods or services; that which one is bound to pay or perform for another; a fixed and certain obligation to pay money or some other valuable thing, in the present or in the future." And. Law Dict. p. 315. So

far as I am aware, we are called upon for the first time to construe the phrase, "actions arising on contract for the recovery of money only," and it is important that a rule of practice be established that will enable the practitioner to say whether an attachment will or will not lie in a given case. In my opinion it does not lie in cases like the present, and the order continuing the attachment in force ought to be reversed.