(96 N. W. Rep. 841.)

---

### J. K. SONNESYN *v.* L. W. AKIN AND G. M. BABCOCK.

Opinion filed May 28, 1903.

#### Attachment When Debt Incurred for Property Obtained Under False Pretenses—Statute Construed.

1. Subdivision six of section 5352, Rev. Codes 1899, which provides that the plaintiff may have the property of the defendant attached "when the debt upon which the action is commenced was incurred for property obtained under false pretenses," construed. *Held,* that this ground of attachment is available only when the action is commenced upon a debt which has been assented to by the defendant, and that it does not apply in actions to recover damages for torts.

#### Attachment Vacated, When Affidavit as Foundation Thereof, is False.

2. Under section 5376, Rev. Codes 1899, the court or judge is required to discharge an attachment when, on motion therefore, it appears that the affidavit upon which it was issued is untrue. The plaintiff, in his affidavit, set out the sixth subdivision of section 5352, Rev Codes 1899, above quoted, as ground for the attachment of defendants' property; that is, that his action was commenced upon a debt, etc., whereas, in fact, his action was commenced to recover damages for deceit. It is *held* that the ground of attachment relied upon was not available, and that, because of the falsity of the affidavit in this particular, the attachment was properly vacated by the trial court. and the order vacating the same is affirmed.

Appeal from District Court, Cass county; *Charles A. Pollock, J.*

Action by J. K. Sonnesyn against L. W. Akin and G. M. Babcock. Judgment for defendants, and plaintiff appeals.

Affirmed.

*Morrill & Engerud,* for appellant.

*B. G. Tenneson* and *Ball, Watson & Maclay,* for respondents.

Young, C. J. This is an appeal from an order vacating an attachment. The action in which the writ issued was brought to recover damages for a deceit alleged to have been committed by the defendants in connection with the sale by them to plaintiff of 960 acres of farm lands situated in Ransom county. The deceit which is alleged as a cause of action consists of false representations by defendants to plaintiff that they were the owners of the land. The complaint alleges, in substance, that on the 30th day of September, 1902, the defendants, with intent to deceive and defraud the plaintiff, falsely and fraudulently stated and represented to the plaintiff that they were the owners of the land in question, and were legally entitled to make a contract to sell and convey the same; that the plaintiff, relying upon said representations, and believing them to be true, entered into a contract to purchase said lands, and paid to the defendants upon the purchase price thereof, in cash and merchandise, $12,857.33; that defendants were not the owners of said land, and were not legally entitled to enter into a contract to sell and convey the same; that the defendants knew said statements were false and untrue, and they made the same for the purpose of inducing the plaintiff to pay to them the said sum of $12,857.33; that the land in question was owned by other persons—320 acres by George H. Collins, 320 acres by Thomas Jones, 160 acres by N. A. Lundvall, and 160 acres by Annie Frey; "that by reason of the premises the plaintiff has been damaged in the sum of $12,857.33," for which sum he demanded judgment, together with his costs and disbursements. The affidavit upon which the writ was issued stated two statutory grounds for its issuance, and in the following language: "(1) That the debt upon which the action is commenced was incurred for property obtained under false pretenses; (2) that the said defendants are about to sell, assign, transfer, secrete, or otherwise dispose of their property with intent to cheat or defraud their creditors." The affidavit further stated "that said action is commenced for the recovery of money only, and that a duly verified complaint therein has been filed with the clerk of the district court, which said complaint sets forth a proper cause of action for attachment in favor of said plaintiff and against said defendants." An order to show cause why the writ should not be vacated and set aside was issued by the trial court, and, after a hearing at which a large number of affidavits in support of and in

opposition to the motion were presented, an order was made vacating the writ, from which order this appeal is taken.

We are of opinion that the attachment was properly vacated, and the order appealed from must therefore be affirmed.

Section 5356, Rev. Codes 1899, provides that "the warrant shall issue upon a verified complaint, setting forth a proper cause of action for attachment in favor of the plaintiff and against the defendant, and an affidavit, setting forth in the language of the statute one or more of the grounds of attachment enumerated in section 5352," which grounds are eight in number. Formerly—and this is still true in a number of states—the remedy by attachment was not available except in actions upon contract. Our statute (section 5352, Rev. Codes 1899) extends the remedy to actions "for the wrongful conversion of personal property, or for damages, whether arising out of contract or otherwise." Section 5376, Rev. Codes 1899, provides that if, upon a motion to discharge, it shall appear "to the satisfaction of the court or judge that the attachment was irregularly issued, or that the affidavit upon which it was issued is untrue, the attachment must be discharged." It is true, plaintiff's complaint sets forth a cause of action in which an attachment may be had. His cause of action is for damages for a deceit, but, as we have seen, section 5352, Rev. Codes 1899, authorizes the issuance of the writ in actions "for damages, whether arising out of contract or otherwise." The vital question presented to the trial court on the motion to vacate the writ, and to this court on this appeal, is whether the grounds set forth in the affidavit as a basis for the issuance of the writ were true. It appears from an examination of the affidavits that one of the grounds—that is, the claim that defendants were disposing of their property to defraud their creditors—was not seriously urged in the trial court, and it is not urged or relied upon in this court. This ground is clearly not sustained by the evidence.

Counsel for appellant rely entirely upon the allegation in his affidavit that "the debt upon which the action is commenced was incurred for property obtained under false pretenses," which is the sixth ground for atachment under section 5352, Rev. Codes 1899, and the affidavits submitted on the motion are chiefly directed to the question of the defendants' alleged false pretenses of ownership of the land. On the question as to whether they did so represent, the evidence is in square conflict. It is not disputed that the plaintiff contracted to pay the sum of $25,920 for the entire 960

acres, or that he paid thereon the sum of $12,857.33, as alleged
by him. Neither is the fact disputed that the defendants did not
have the legal title when they entered into the contract. It is shown,
however, that they had contracts from the owners of all of it except
the Frey quarter section, and that they previously had a contract
for this quarter, which had been surrendered for the purpose of ob-
taining a new one, and that subsequent to the attachment, and at
a greatly enhanced price, they purchased the Frey land, and at the
hearing of the motion were in a position to convey all of the land
to the plaintiff. No formal findings of fact were made by the trial
court, but it is apparent from the record that the trial judge was
of opinion that the defendants did not represent to plaintiff that
they had title, and for this reason vacated the attachment. Coun-
sel for the appellant strenuously urge on this appeal that this was
an error, and that the order vacating the writ should therefore be
reversed. Their contention is, first, that the clear preponderance
of evidence is to the effect that the defendants did in fact commit
the deceit alleged (that is, falsely represented that they had title) ;
and, second, that, even if the evidence does not establish that fact
clearly, the court should not, in any event, pass upon the question
upon affidavits in advance of the trial on the merits, for the reason
that "it necessarily involves the issues of the action itself, and
that issue must be determined by a jury."

The authorities are divided on the question as to whether it is
proper, on a motion to dissolve an attachment upon the ground that
it was improperly issued, to pass upon the grounds of the attach-
ment, where they are the same as the issues in the main action.
*Newell et al.* v. *Whitwell* (Mont.) 40 Pac. 866.; *Kuehn* v. *Paroni,*
(Nev.) 19 Pac. 273, and *Olmsted* v. *Rivers,* 9 Neb. 234, 2 N. W. 366,
may be cited as holding that it is not. *Bundrem* v. *Denn,* 25 Kan.
430, and *Carnahan* v. *Gustine et al.* (Okl.) 37 Pac. 594, are to the
effect that courts should not refuse to determine the truth of the
grounds of attachment stated in the affidavit, even when it involves
a determination of the facts constituting plaintiff's cause of action.
The view that we have taken of this case renders a consideration
of both of these contentions unnecessary. For the purposes of this
case, we might assume both contentions of appellant's counsel
to be true; that is, that the affidavits clearly establish the false rep-
resentation; or again, we might assume the correctness of their
legal proposition, viz., that, when the cause of action and ground

of attachment are the same, the truth of the same should not be inquired into upon affidavits, but left to the determination of the jury at the trial of the action. Nevertheless we would be compelled to sustain the order vacating the attachment. The attachment must fall because of the falsity of the affidavit in another and vital particular, and one which is not affected by either of counsel's contentions. The falsity of the affidavit lies in the statement that his action is commenced upon a debt. It may be conceded that the evidence shows that the defendants used false pretenses, but false pretenses alone do not give the right to attach under the subdivision in question. The fundamental feature of this ground is a cause of action based upon a debt; another is that the debt is for property; and, finally, that the debt shall have been incurred or contracted by the defendant by false pretenses. The plaintiff's action is not commenced upon a debt. On the contrary, his action is based upon a tort. His action is not to enforce the payment of a debt arising out of a contract, either express or implied, but is prosecuted for the purpose of recovering damages for an alleged tort. The greatest latitude of definition would not enable us to say that an action based upon a tort is an action based upon a debt. Blackstone defines "debt" as "a sum of money due by certain and express agreement." This definition has been broadened. Mr. Justice Field, in *Perry* v. *Washburn,* 20 Cal. 318, p. 350, in determining whether a tax is a debt, stated that "a debt is a sum of money due by contract, express or implied. A tax is not a debt.  *  *  *  It is not founded upon contract. It does not establish the relation of debtor and creditor between the taxpayer and state. It owes its existence to the action of the legislative power, and does not depend for its validity or enforcement upon the individual assent of the taxpayer." It has been held, "with regard to attachment, that it is such a debt as can be enforced in an action of debt or *indebitatus assumpsit."* 1 Shinn on Attachment, section 14; *Mills* v. *Findlay,* 14 Ga. 230; *Elliott* v. *Jackson,* 3 Wis. 649. In *Sunday Mirror Co.* v. *Galvin,* 55 Mo. App. 412, it was held that "a conversion of money, though fraudulent on the part of the tort feasor, will not constitute a fraudulent contraction of a debt, within the purview of the statute defining the grounds of attachment." The reasoning of the commissioner, which was upheld, was to the effect that, where "the gravamen of the complaint lies in tort, there can be no debt, within the meaning of the attachment law." The fourteenth subdivision of the Missouri statute

(Rev. St. 1879, section 398) authorizes an attachment "where the debt was fraudulently contracted on the part of the debtor." In the prior case of *Finlay* v. *Bryson*, 84 Mo. 664, in which the plaintiff attempted to waive the tort and sue *in assumpsit,* and thus sustain an attachment under the above subdivision, it was held that "one cannot waive a tort and sue *in assumpsit* if the effect of it is to give jurisdiction over the subject matter to a court which otherwise would not possess it, or to bring the case within the terms of a statute which otherwise would not include it. Nor can one sue *in assumpsit* for the wrongful conversion of personal property, and insist upon such conversion as a basis of a fraud to sustain an attachment in the same suit." The court, after stating that the Missouri statute authorized the remedy by attachment "in all civil actions, whether resting on contract or sounding in tort," said that, "when an attachment is sought upon the grounds contained in the fourteenth subdivision, the misconduct of the defendant, constituting the ground of the attachment, must relate to the same cause of action set forth in the petition; and it is there, as well as in the affidavit of attachment, referred to as an action of debt. The plaintiff must depose in his affidavit that the debt sued for in the petition was fraudulently contracted on the part of the debtor. This language, in its ordinary signification, does not aptly apply to actions sounding in tort. In construing statutes, we are expected to accept the meaning of language as indicated by its ordinary use, unless it is apparent from the context and subject matter that a different meaning must have been intended by the lawmaking power. * * * I think there never was a time in our judicial history when the subject matter of a debt fraudulently contracted on the part of the debtor was not well known in our courts. * * * Debts induced by fraud are common things in our Reports, and, as such, they answer the language of the fourteenth subdivision, without going further. The fraudulent transaction referred to must culminate in a debt. The debtor must have been guilty of some material, deceptive act, word, or concealment, done or suffered by him with the intent to induce the opposite party to consent to the debt. The opposite party must have relied upon such false acts or manifestations of the debtor, and yielded his consent to the contract on the faith thereof. In this manner, alone, results a debt fraudulently contracted on the part of the debtor. * * * The evidence fails to show that any debt was ever contracted at all by the debtor. * * * As a mat-

ter of fact, he agreed to no debt, nor can he lawfully treat it as such. That privilege belongs to the other side, not to him." In the above case it was also contended that the plaintiff was at liberty to waive the tort, and sue *in assumpsit* for money had and received, and thus sustain his attachment. This the court denied, saying that, "so far as the defendant is concerned, this right rests upon a fiction imposed at the plaintiff's pleasure upon the actual facts of misconduct of the defendant, which discloses no elements of a promise, contract, or agreement. But when the gravamen of the transaction sounds in tort, the plaintiff will not be indulged in this fiction, if the effect of it is to give jurisdiction over the subject matter to a court which otherwise would not possess it, or to bring the case within the terms of the statute which otherwise would not include it. If, therefore, the only ingredient of indebtedness distinguishing the ground of the attachments rests on fiction, and is furnished by the plaintiff at his election, my conclusion is that the transaction intended in the affidavit cannot, within the meaning of the statute, answer the description of a debt fraudulently contracted on the part of the debtor." *Goss* v. *Board of Commissioners,* 4 Colo. 468, is to the same effect. See, also, *Jacoby* v. *Gogell,* 5 Serg. & R. 450; *Porter* v. *Hildebrand,* 14 Pa. 129. In this case, however, the plaintiff has not attempted to waive the tort and sue for money had and received. On the contrary, he declares upon the tort. His complaint states a cause of action for damages for deceit. *Clark* v. *Edgar,* 12 Mo. App. 345.

As we have seen, the plaintiff's cause of action is one in which a writ of attachment may issue if proper statutory grounds exist, but it does not follow that all of the eight grounds enumerated in section 5352, Rev. Codes 1899, were available to him. It is apparent that the first ground stated in said section, towit, the non-residence of defendant, and also a number of others, apply indiscriminately to all actions in which a writ may issue, regardless of the nature of the action, whether it is upon a contract, judgment for the conversion of personal property, or for damages. It is also apparent that all of the eight grounds do not apply to all classes of actions. For instance, a writ may be had under the eighth ground "in an action to recover purchase money for personal property sold to the defendant," in which case the writ may be "levied upon such property." No one would seriously contend that this ground when stated in an affidavit, would sustain an attachment in an

action based upon a tort, or any other action than one commenced to recover purchase money for personal property. We think it is equally plain that the sixth ground upon which the appellant relies, which authorizes the issuance of the writ "when the debt upon which the action is commenced was incurred for property obtained under false pretenses," restricts it to actions brought to recover upon debts, and that it has no application to any other actions, such as actions to recover damages for torts, as in the case under consideration.

The order vacating the attachment will be affirmed. All concur.

ON REHEARING.

(November 30, 1903.)

It was strongly urged by counsel for appellant in their petition for a rehearing, and also upon the reargument, that this court, in holding that the sixth statutory ground for attachment, viz., "when the debt upon which the action is commenced was incurred for property obtained under false pretenses," applies only in actions upon a contract indebtedness, and is not applicable in an action to recover damages for torts, "misconstrued the statute, and disregarded the express language of the statute in defining the term 'debt.'" It was argued that "the legislature of this state has specifically defined the word 'debt,' and has adopted the very broadest definition thereof, and has discarded the technical meaning thereof." The conclusion for which counsel contend is that "a 'debt'—that which a debtor owes—is synonymous with 'obligation,' and 'obligation' includes liabilities for torts. In short, then, a debt as the term is used in our statute (except chapter 96 of the Civil Code), is an obligation arising either from contract or tort." Counsel are in error in stating that the legislature has specifically defined the meaning of the word "debt," and also in the contention that the words "debt" and "obligation" are synonymous. The most that can be said is that the terms "creditor" and "debtor" have been defined. The statute nowhere defines the term "debt." The argument that the word "debt," as used in the statute under consideration, should have any other than its ordinary meaning, and should be treated as synonymous with "obligation," has no other basis than the fact that the words "debtor" and "creditor" have been defined by the legislature; and because these words have been extended beyond their ordinary and natural meaning, we are asked

to say that the legislature has also defined the term "debt," and broadened its meaning, although, as already stated, there is no attempt at a legislative definition of the term debt. To make it clear that the legislature has not defined the word "debt," it will be necessary to refer to the several provisions of the statute which are pertinent, and upon which counsel rely. Sections 5047, 5048, Rev. Codes 1899, read as follows:

"Sec. 5047. Debtor Defined. A debtor within the meaning of this chapter is one who by reason of an existing obligation is or may become liable to pay money to another, whether such liability is certain or contingent.

"Sec. 5048. Creditor Defined. A creditor within the meaning of this chapter is one in whose favor an obligation exists by reason of which he is or may become entitled to the payment of money."

Chapter 96, Civil Code, which includes the sections just quoted, relates to fraudulent instruments and transfers. It is not open to question that under the above sections the terms "debtor" and "creditor" have their usual signification; that is, one from whom or to whom a debt is due, using the word "debt" according to its common meaning. The particular provision upon which counsel rely to sustain their contention that "debt" and "obligation" are synonymous is contained in section 5113, Rev. Codes 1899, which is a part of chapter 99 of the Civil Code, devoted to definitions and general provisions. This section reads as follows: "Except as defined and used in chapter 96 of this Code, every one who owes to another the performance of an obligation is called a debtor and the one to whom he owes it is called a creditor." Section 3762, Rev. Codes 1899, defines an obligation as follows: "An obligation is a legal duty by which a person is bound to do or not to do a certain thing." Section 3763, Rev. Codes 1899, defines the manner in which an obligation may arise. It reads as follows: "An obligation arises either from: (1) The contract of the parties; or (2) the operation of law." Chapter 43 of the Civil Code relates to obligations created by contract, and chapter 44 relates entirely to obligations imposed by law. Section 3940 of this chapter provides that "every person is bound without contract to abstain from injuring the property of another or infringing upon any of his rights." The remaining sections of this chapter relate to liabilities for breaches of the duties imposed by the above section; that is, for the various kinds of tort, including deceit. An examination of the several sec-

tions above quoted makes it plain that the legislature has broadened the meaning of the words "debtor" and "creditor" so as to include all persons from whom or to whom obligations are due, whether arising from contract or imposed by law; but none of these provisions define the term "debt," or furnish ground for the contention that "debt" and "obligation" are synonymous. It will be conceded that the common and ordinary meaning of the term "debt," in legal acceptation of the term, is an obligation resting upon contract, either expressed or implied. So, too, it may be said that a debtor is one who owes a debt; and creditor, one to whom a debt is due. The legislature has seen fit to call all persons debtors who owe obligations, instead of all persons who owe debts, and to call all persons to whom obligations are due creditors, instead of all persons to whom debts are due. These statutory definitions, however, do not touch the meaning of the word "debt." They merely enlarge the class of persons who shall be "called" debtors and creditors. They neither enlarge nor restrict the meaning of the word "debt." Aside from the statute, a debtor would be one who would owe a debt. Under the statutory definitions, one would be classified as a debtor if he owned an obligation, whether the obligation be one resting upon contract, and therefore a debt proper, or whether it be one merely imposed by law. In either event he would be a debtor. Under the statutory definitions of a debtor, it is not necessary to owe a debt. It is sufficient if one owes an obligation imposed by law. Every debt, however, is an obligation, but every obligation is not a debt. "Obligation" is the broader term; "debt," the narrower. The term "obligation" includes all debts. The term "debt" does not include all obligations, but only that particular kind of obligations known as "debts." The statement, therefore, that the legislature has specifically defined the term "debt," and that the term "debt" is synonymous with the word "obligations," is not sustained by the statute.

But our conclusion that the sixth ground of attachment does not apply in action to recover damages for torts does not rest wholly upon the fact that the word "debt," standing alone, in its usual and ordinary sense, imports an obligation resting upon contract. This is its common meaning. It was said in *Minga* v. *Zollicoffer,* 23 N. C. 279, "that neither in common parlance nor in legal proceedings is a mere wrongdoer designated as a debtor, nor his responsibility for wrong classed under the denomination of debts. Debt

are creatures of contract, and the language of these acts must be exceedingly strained to bring within their operation claims arising not from contract, but tort." See, also, *Hart* v. *Barnes,* 24 Neb. 785, 40 N. W. 322. The word "debt," however, also has an uncommon meaning, covering all kinds of obligations, and if it appeared that the word was used by the legislature in an unusual sense, it would be our duty to give it effect according to that intention, for words are to be given the effect which the legislature intended they should have, whether it be their usual or unusual meaning. See *New Jersey Insurance Co.* v. *Meeker,* 37 N. J. Law 282. But we think that it is not at all uncertain, for reasons which will hereafter appear, that the legislature used the word "debt" in its usual sense. The statute provides that the plaintiff may have the defendant's property attached "when the debt upon which the action is commenced was incurred for property obtained under false pretenses." To make this ground of attachment available for seizing defendant's property, it must appear, therefore, not only that his action is commenced upon a debt, but also that his debt is of the particular kind described, namely, a debt "incurred for property obtained under false pretenses." It is not enough that the action is based upon a debt. It must be a debt which answers the requirements of the statute in the descriptive phrase; that is, a debt "incurred for property obtained under false pretenses." If it be not that kind of a debt, the action will not sustain an attachment under the sixth ground. This ground of attachment has been in force in this jurisdiction for over twenty years, and during all this time the debt essential to sustain an attachment has been described as a "debt incurred for property obtained under false pretenses." Chapter 32, p. 36, Laws 1881 first authorized an attachment when "the debt was incurred for property, obtained under false pretenses." This ground was re-enacted without change in the Compiled Laws of Dakota of 1887 (subdivision 3 of section 4995), and later it was embodied in the Revised Codes of 1895 as subdivision 6 of section 5352, in which form it now exists.

Up to the year 1897 the remedy by attachment was not generally available in this jurisdiction in tort actions, upon any ground. Prior to that time a writ could be issued only "in an action on a contract or judgment for the recovery of money only, or for a wrongful conversion of personal property." See section 4993, Comp. Laws Dak. 1887, and section 5352, Rev. Codes 1895. Chapter 30, p. 33, Laws,

1897, amended the last named section by adding to the actions in which an attachment might issue actions "for damages whether arising out of contract or otherwise." The amendatory act of 1897, just referred to, also added the eighth ground of attachment, which provides that, "in an action to recover purchase money for personal property sold to the defendant, an attachment may be issued and levied upon such property." The seven grounds for attachment, as found in section 5352, Rev. Codes 1895, including the sixth, now under consideration, were re-enacted without change of any kind.

It will thus be seen that the sixth ground of attachment has been in force in this jurisdiction continuously since 1881, and further, that the word "debt," as used therein, originally meant a debt aris-ing from contract and did not include liabilities for torts. This is necessarily true, for, as we have seen, until chapter 30, p. 33, Laws 1897, was enacted, an attachment could issue only in actions on contract, or action upon judgments for the recovery of money or for the wrongful conversion of personal property. It is obvious that this ground of attachment could not apply to the two kinds of actions last named. It was therefore only applicable in actions "on a contract" for the recovery of money only; that is, in an action upon a "debt" proper. This meaning of the word debt has not been changed, and in this connection it is proper to note that all of the provisions above quoted, defining the terms "debtor," "credi-tor," and "obligation," upon which counsel for appellant rely, have been in force continuously since 1866. Section 5151, Rev. Codes 1899, reads as follows: "Words and phrases are construed according to the context and approved usage of the language; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law or are defined by statute, are to be construed according to such peculiar and appropriate meaning or definition." The rule of construction announced in this section is, we think, directly applicable. Prior to the adoption of chapter 30, p. 33, of the Laws of 1897, permitting attachments in tort actions, "a debt incurred for property obtained under false pretenses" had acquired a fixed meaning in this jurisdiction. It meant an obliga-tion to pay intentionally incurred and by false pretenses. Fuller, J., in *Finch* v. *Armstrong,* 9 S. D. 261, 68 N. W. 741, in discussing this particular ground of attachment, said: "Indemnity against pecuniary loss occasioned by the dishonest acts or omissions of those to whom credit has been extended appears to be the princi-

pal, though not exclusive, aim and purpose of the remedy which attachment affords; and, to thereby promote more effectually the ends of justice, a number of state legislatures have made the fraudulent contracting of the debt sued upon a ground for an attachment. Obviously, the purpose of all such statutes is to reach and operate upon debtors who intentionally incurred the debt, to recover which the action is brought, by obtaining property under false pretenses. In legal acceptation, the word 'debt' signifies 'a liquidated demand; a sum of money due by certain and express agreement; a sum of money due by contract.' And. Law Dict." The foregoing definition of the word "debt," as used in this subdivision, was again approved by the same court in *Coats* v. *Arthur,* 5 S. D. 279-294, 58 N. W. 675. It is true, the legislature of 1897 increased the classes of actions in which attachments may be issued, and added actions "for damages whether arising out of contract or otherwise," but the seven grounds for attachment as they had theretofore existed were not changed in any particular. The sixth ground was re-enacted literally. For more than sixteen years prior thereto it had a fixed meaning, being applicable only in actions upon contract obligations intentionally entered into under the inducement of false pretenses. The legislature did not see fit to change the meaning, and we cannot do so. The plaintiff's action in this case is not based upon a debt or contract obligation, but upon a tort, viz., the defendant's alleged violation of a legal duty, which, as was said in *Rich* v. *New York etc., Ry. Co.,* 87 N. Y. 382, "is a very different thing from a contract obligation." See *Pursley* v. *Wikle,* 118 Ind. 139, 19 N. E. 478.

The cases cited from Minnesota and Iowa, decided under statutes similar to or like our own, do not sustain appellant's contention that an action to recover damages for a tort will sustain an attachment under the sixth statutory ground. In *Cole* v. *Aune,* 40 Minn. 80, 41 N. W. 934, which is chiefly relied upon by appellant's counsel, an attachment was sustained under the statutory ground that "the plaintiff's debt was fraudulently contracted," in an action to recover money which had been embezzled by the defendant. The facts were that the defendant, Aune, had been in the employ of the plaintiff, Cole, conducting a store, at a fixed salary of $60 per month, and for a compensation in addition thereto of one-half of the net profits, payable upon an accounting. The business was conducted under the name Cole & Aune. Defendant drew his fixed

salary, and also appropriated other sums used in the business, and refused to account therefor. The action was brought to recover these sums. It was not an action to recover damages for a tort, as in this case. In that case the attachment was sustained; the court holding that, under a liberal definition of the word "debt," the defendant's obligation to pay plaintiff the money sued for con-stituted a debt. The court said: "The term 'debt' is differently de-fined, according to the subject matter and language in connection with which it is used. Strictly, it denotes a sum of money due upon contract arising from the agreement of parties. In a more enlarged sense, it may mean any just claim or demand for the recovery of money; that which one person owes and is bound to pay to another." It is evident that the attachment was sustained in that case upon the ground that the recovery sought was upon the defendant's implied obligation to pay, and therefore upon a debt proper, under the liberal definition adopted by the court in that case. That the Minnesota courts do not extend the statute to actions brought to recover damages for torts is entirely clear, as will be seen by refer-ence to the later case of *Baxter* v. *Nash,* 70 Minn. 20, 72 N. W. 799. This was an action against the directors of a banking corporation to recover damages for receiving deposits, knowing it to be insol-vent, and was an action for damages for a breach of legal duty, and therefore a tort action. An order dissolving an attachment which issued upon the ground that "the plaintiff's debt was fraudu-lently contracted" was affirmed. It was claimed in that case that the attachment was allowable in cases of tort under the authority of *Cole* v. *Aune, supra.* This was denied. The court, speaking through Start, C. J., said: "The language of the statute (Gen. St. 1894, section 5289) allowing an attachment where 'the plaintiff's debt was fraudulently contracted' is to be liberally construed, so as to include debts fraudulently contracted or incurred. *Cole* v. *Aune,* 40 Minn. 80, 41 N. W. 934. The plaintiff's cause of action, however, does not fall within even this liberal construction, for it is founded solely in tort. * * * Such claims cannot be meta-morphosed into 'a debt fraudulently' contracted, by the most heroic construction. See Drake on Attachment, section 77." The case of *Stanhope* v. *Swafford,* 77 Iowa 594, 42 N. W. 450, was decided under a statute differing in no material respect from our own. The action, however, was not to recover damages for a tort, but, on the contrary, was based upon an implied contract; and the attachment

was sustained upon the ground that the plaintiff had waived the tort and sued upon an implied promise, "in a civil action as for a debt." In that case the plaintiff had purchased land from the defendant, and paid him therefor the sum of $2,240, without having seen the land, and relying entirely upon the defendant's representations. It was alleged that it was in fact worth but $640. The action was to "recover the difference between the actual value of the land and its value as shown by the defendant's representations," and the basis of the attachment was that the defendant had obtained the $1,600 difference in value by false pretenses. The court sustained the attachment, not upon the ground that it was sustainable in an action based upon a tort, but just the reverse— upon the ground that the tort had been waived, and that the action was "a civil action as for debt." The court, after stating the facts, said: "Plaintiff thus sustained loss and damage to the extent of sixteen hundred dollars if he retained the property purchased, as he is, by the law authorized to do. Under familiar rules of the law, which will be recognized by the profession without the citation of authorities, defendants, having received pecuniary advantage from the misrepresentations and false pretenses, are liable in a civil action as for a debt; the plaintiff being authorized to waive the right to proceed as for a tort, and to sue for the loss and damage he sustained. The defendants in that case are liable for such loss and damage, and their liability is a debt arising on the implied promise which the law raises that they will pay the loss suffered by plaintiff." In this case the plaintiff has not waived the tort and brought his action upon an implied promise, and is not, therefore, within the reasoning of the Iowa case. On the contrary, his action is to recover damages for the tort. It is not upon a debt. His cause of action does not rest upon the defendant's contract, either express or implied, to pay the sum he seeks to recover. It is to recover damages for a wrong, and, as was said in *Day* v. *Bennett,* 18 N. J. Law 288, "damages are no debt till they are liquidated." The sixth ground of attachment upon which he relies will not support the attachment in an action based upon a tort.

The order of the district court, therefore, in dissolving the attachment, was proper, and will be affirmed. All concur.