[No. 15220.   Department One.   February 28, 1919.]

THE STATE OF WASHINGTON, *on the Relation of American Piano Company et al., Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *John S. Jurey, Judge, Respondent.*[1]

GARNISHMENT (2)—GROUNDS—EXISTENCE OF "DEBT" — STATUTES. Under Rem. Code, § 680, authorizing a garnishment (1) where an original attachment has been issued, and (2) where plaintiff sues for a "debt," the term "debt" is not limited to sums due on express contract, but is as broad as the term "indebtedness" in the attachment law, construing the statutes as *in pari materia* and tracing the history of legislation on the subject.

STATUTES (71)—CONSTRUCTION—REFERENCE TO OTHER ACTS. The attachment and garnishment acts, the latter authorizing garnishment where a writ of attachment has issued, are to be considered as *in pari materia.*

GARNISHMENT (2)—ACTIONS IN WHICH AUTHORIZED—CONVERSION —WAIVER OF TORT. Garnishment lies in an action to set aside a preference under the bankruptcy act, since the tort may be waived and the action based upon implied contract to repay the money obtained, the taking of which was a conversion.

Application for a writ of prohibition, filed in the supreme court January 14, 1919, to prohibit further proceedings in garnishment in the superior court for King county, Jurey, J.   Denied.

*E. P. Whiting,* for relators.

*Charles H. Hartge* and *Preston, Thorgrimson & Turner,* for respondents.

TOLMAN, J.—On or about the 23d day of August, 1918, one W. W. Hay, as trustee in bankruptcy of Jones-Rosquist Piano Company, commenced an action in the superior court for King county against the relators herein, for the purpose of recovering a judgment for $4,000 and interest, alleged to be the value

[1]Reported in 178 Pac. 827.

of certain personal property transferred by said
Jones-Rosquist Piano Company, while insolvent, and
within four months prior to its being adjudicated a
bankrupt, alleging knowledge of such insolvency on
the part of relators, and that such transfer created
an unlawful preference in favor of the relators under
the terms of the bankruptcy law.

At the same time, an affidavit for garnishment was
filed, garnishment writs were issued and served upon
numerous garnishee defendants, two of whom an-
swered, one admitting an indebtedness to the relator
J. H. Shale, as trustee, and the other admitting pos-
session of certain personal property belonging to the
relator American Piano Company.

Relators, defendants in the original action, being
nonresidents of the state, service was sought to be
obtained by publication of summons; and thereafter
relators appeared in that action specially only, and
moved the court to quash the purported service of
summons upon each of them and to quash the writs of
garnishment, for the reason alleged that such writs
were unlawfully issued, and the court was without
jurisdiction in the premises. The motions to quash
being denied, relators come here seeking a writ of
prohibition forbidding further proceedings in the
cause.

The sole question raised by the petition is whether
or not the writs of garnishment were lawfully issued.
If so, the superior court has jurisdiction to proceed;
if not, it has no jurisdiction, and can acquire none by
the publication of summons. The garnishment stat-
ute, Rem. Code, § 680, provides that the clerks of
superior courts may issue writs of garnishment:

"(1) Where an original attachment has been is-
sued in accordance with the statutes in relation to
attachments;

"(2) Where the plaintiff sues for a debt and makes affidavit that such debt is just, due and unpaid, and that the garnishment applied for is not sued out to injure either the defendant or the garnishee."

And it is argued here that the word "debt", in its legal acceptation, has a clear and definite meaning, defined by Blackstone as:

"The legal acceptation of *debt* is, a sum of money due by certain and express agreement: as, by a bond for a determinate sum; a bill or note; a special bargain; or a rent reserved on a lease; where the quantity is fixed and specific, and does not depend upon any subsequent valuation to settle it." 3 Blackstone's Commentaries (Lewis ed.), *154.

And such, no doubt, is the technical meaning of the word. But is it used in that narrow and restricted sense in our garnishment statute? Prior to the act of 1893, garnishment was effected only under a writ of attachment or an execution. And in all cases where a writ of attachment issued, debts, credits, and other personal property incapable of manual delivery, might be attached by serving an attachment writ upon the person having possession of such personal property. 2 Hill's Code, § 300. But unless ground for an attachment existed, or the creditor had reduced his claim to judgment, there was no method by which the creditor could reach and hold money or property belonging to the debtor in the hands of a third person.

The attachment act prior to 1893, as now, required that an indebtedness exist in favor of the attaching creditor; and by the garnishment act of 1893, it clearly appears that the legislature did not intend to restrict any right then existing, because it clearly preserved all existing rights by providing, in subdivision one as heretofore quoted, that the writ of garnishment should issue in all cases where an original

attachment had issued; and then, to enlarge the scope of the writ, provided in subd. 2, in effect, that, when no ground for attachment existed, yet the writ should nevertheless issue where the plaintiff sues for a debt. We are convinced, therefore, that the word "debt" in the garnishment act was intended to mean the same identical thing as the word "indebtedness" in the attachment act. In 36 Cyc. 1147, it is said:

"Statutes *in pari materia* are those which relate to the same person or thing, or to the same class of persons or things. In the construction of a particular statute, or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law. The endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the legislature, or to discover how the policy of the legislature with reference to the subject-matter has been changed or modified from time to time."

And again, at page 1150 of the same volume:

"Whenever a legislature had used a word in a statute in one sense and with one meaning, and subsequently uses the same word in legislating on the same subject-matter, it will be understood as using it in the same sense, unless there be something in the context or the nature of things to indicate that it intended a different meaning thereby."

To hold that the writ of garnishment will issue only when a debt exists, in the technical sense of the term, would be clearly to deny the plain legislative intent and to limit the office of that writ unduly. Holding, then, that the word "debt" in the garnishment act is as broad as the word "indebtedness" in the attachment act, we come to the real question in this case, which is, Will either attachment or garnishment lie

in an action brought to set aside a preference under the bankruptcy act? Cases are not wanting which hold that the wrongful conversion of personal property will not authorize the issuance of a writ of attachment, and that one may not waive the tort and sue in *assumpsit* so as to give jurisdiction. See *Finlay v. Bryson,* 84 Mo. 664; *Sonnesyn v. Akin,* 12 N. D. 227, 97 N. W. 557; *Welch v. Renfro,* 42 Tex. Civ. App. 460, 94 S. W. 107; *Baxter v. Nash,* 70 Minn. 20, 72 N. W. 799. Upon the other hand, the great weight of authority, and the better reasoning, we think, is evidenced by the more modern doctrine, to the effect that, under statutes limiting the right of attachment to suits on claims arising on contract, the tort may be waived, and the claim will be considered as arising from an implied contract. In *Judge v. Curtis,* 72 Ark. 132, 78 S. W. 746, it is said:

"Ordinarily a plaintiff in a suit for conversion may waive the tort, and rest upon the right the law gives him against one who has deprived him of his property, or some right in respect thereto. This obligation of the conversioner which the law imposes upon him is an implied contract, and, waiving damages for the tort, the plaintiff recovers, if at all, on this implied contract. Whether or not in any given case the tort may be waived, and the implied contract remain, depends upon the facts and circumstances of the case. The rights and obligations of the parties, as well as the remedy, are to be determined by the nature of the transaction involved. The cause of action which the plaintiff has against another for taking and disposing of his property is but a demand arising upon a contract, not express, but one which the law implies, and makes binding upon the wrongdoer. There is apparently some conflict in the authorities on the subject, but the conflict is more apparent than real, for the difference is, after all, a difference in the facts in the cases adjudicated, or mainly so, at least."

In *Felker v. Douglass* (Tex. Civ. App.), 57 S. W. 323, it is said:

"The appellant complains that the court erred in overruling the motion to quash the writ of attachment, on the ground that the claim of plaintiff was for the wrongful conversion of ties, sounding in tort, upon which an attachment would not lie. The general rule is that a writ of attachment will not issue in an action for damages where the claim is unliquidated and uncertain. This rule does not apply where there is a wrongful conversion of property, where its value can be fairly approximated. The claim of plaintiff in this case was for certain cross-ties wrongfully taken, the number and value being definitely stated in the petition. Under such circumstances, there is an implied promise to pay the value of the property when taken, and the demand is of such certainty as to form a basis for the issuance of the writ."

In *Barth v. Graf,* 101 Wis. 27, 76 N. W. 1100, it is said:

"This court has repeatedly held that, where money or property has been wrongfully converted, the owner may waive the tort, and recover the amount of the money or the value of the property so converted upon an implied contract. *Norden v. Jones,* 33 Wis. 600; *Smith v. Schulenberg,* 34 Wis. 41; *Walker v. Duncan,* 68 Wis. 624, 32 N. W. 689; *Lee v. Campbell,* 77 Wis. 340, 46 N. W. 497; *Van Oss v. Synon,* 85 Wis. 661, 56 N. W. 190. So, it has been expressly held by this court that, where money has been obtained by false representations, the party defrauded may waive the tort and recover upon an implied contract to repay the money so obtained, and may properly have an attachment in such action to enforce such repayment. *Western Assurance Co. v. Towle,* 65 Wis. 247, 254, 26 N. W. 104. That case has been expressly approved in other states. *Hart v. Barnes,* 24 Neb. 782, 40 N. W. 322; *Farmers' Nat. Bank v. Fonda,* 65 Mich. 533, 32 N. W. 664. In this last case, it was held, under a statute like ours, that a suit in attachment lies upon the

implied *assumpsit* arising out of the embezzlement by a clerk of the money of his employer, such a case falling within the language of the attachment act.''

To the same effect, also, see: *Lipscomb v. Citizens' Bank of Galena,* 66 Kan. 243, 71 Pac. 583; *May v. Disconto Gesellschaft,* 211 Ill. 310, 71 N. E. 1001; 6 C. J. 77, 78, and cases there cited. This court has, we think, heretofore aligned itself with the rule last above stated. In *Bingham v. Keylor,* 19 Wash. 555, 53 Pac. 729, referring to our attachment act, this court said:

''Under this statute we think an attachment may issue in an equitable action equally as well as in an action strictly legal, when the object is to recover money, and the nature of it is such as to enable the plaintiff to specify the amount of indebtedness; and where the object of the action is to dissolve a partnership and for an accounting, and it is shown that upon such accounting a balance will be due the plaintiff, we perceive no reason why the plaintiff may not have an attachment, provided, of course, he can and does specify in his affidavit the amounts of the indebtedness and some statutory ground for attachment.''

In *State ex rel. Getzelman v. Superior Court,* 93 Wash. 98, 159 Pac. 1193, three causes of action were considered, all based upon alleged breaches of the covenants of warranty in a deed, first, for the recovery of damages because of the existence of an easement to carry waste water across the premises; second, for the recovery of damages because third parties were in lawful possession of a portion of the granted premises; and third, for the recovery of damages claimed because of an outstanding lease. There, as here, the defendants in the original action were nonresidents, and a writ of attachment, and afterwards a writ of garnishment, was issued and served

upon a resident garnishee. It was there argued that, because the damages sought were uncertain and unliquidated, they made no basis for the issuance of the writ. And it was there held that damages for the breach of a written contract constitute an indebtedness, within the meaning of the attachment act, and that the nature of that action was such that the plaintiff could and did specify the amount of the money demanded as an indebtedness.

The preference alleged in the original complaint under consideration here is unlawful by reason of the terms of the bankruptcy act (act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. §§ 9585-9656]), and not otherwise; but being unlawful, the taking of the property becomes a conversion; and if an implied promise to pay the value arises in one case, it must also arise in the other. The method of the taking cannot affect the implied promise to pay; nor, if a tort can be waived in one case, is there any reason why it cannot be waived in the other. The true and underlying reason why a writ of attachment or garnishment may not issue in certain cases is because unliquidated damages are sought. But if damages arising from the breach of a written warranty are certain enough, as was held in the *Getzelman* case, then it must surely follow that here, where the value of the property converted is certain, known, and properly alleged, the writ of garnishment lawfully issued.

The superior court has jurisdiction to proceed, and the writ sought will be denied.

CHADWICK, C. J., MAIN, MITCHELL, and MACKINTOSH, JJ., concur.